# THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EAST-DIST-WI

2016 MAY 25  P 2: 43

JON W. SANFILIPPO
CLERK

JACKSON FAIRBANKS VEIT

Plaintiff,

vs.

CHERYL I. ANDERSON,
ALLEN H. FRATER,
ANGELA FRATER,
HAZEL & GORDON 1975 TRUST, and,
SPERENZA, INC.

Defendants.

Case No.

**16-C-0621**

---

## VERIFIED COMPLAINT

---

1. Plaintiff Jackson Fairbanks Veit ("Plaintiff" or "Mr. Veit"), alleges the following upon information and belief, except as to those allegations concerning Mr. Veit, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, investigations by Mr. Veit, which include without limitation: (a) review and analysis of submissions, representations and filings made by Cheryl I. Anderson ("Ms. Anderson"), Speranza, Inc. ("Speranza," or, "new company"), Allen H. Frater ("Mr. Frater"), and Angela Frater ("Mrs. Frater"), private and government agencies and departments; (b) review and

analysis of press releases, media reports and online representations issued by and disseminated by InfoCorp, Ms. Anderson, Speranza, and Mr. Frater; and (c) review of other publicly available information concerning InfoCorp, Ms. Anderson, Speranza, and Mr. Frater, Plaintiffs allege as follows:

## NATURE OF THE ACTION

2. This is an action by Jackson Fairbanks Veit to recover damages caused by Defendants' conspiratorial and wrongful acts and violations of Federal Law, including; Civil Conspiracy, Fraud in the Offer or Sale of Securities § 17(a) of the Securities Act, Fraud in Connection with the Purchase or Sale of Securities §10(b) of the Exchange Act and Rule 10b-5 thereunder, and, Promissory Estoppel.

## JURISTICTION AND VENUE

3. The Court has subject-matter jurisdiction over the claims set forth in this complaint pursuant to 28 U.S.C. §1331, and to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 (Securities Act"), 15 U.S.C. §§ 77t(b,77t(d)(1) & 77v(a), Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 (:Exchange Act"). Defendants have directly and indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

4. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(e)(3), and Sections 22(a) of the Securities Act, 15 U.S.C. §77v(a), Sections 27 of the Exchange Act, 15

U.S.C. §78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.

## THE PARTIES AND RELATED ENTITIES

5. Jackson F. Veit is an adult resident of Racine County, was co-founder of InfoCor Communications Company, LLC, and is a Class "A" member of its successor company InfoCorp, LLC.

6. Defendant Allen H. Frater is an adult resident of Ozaukee County; is co-founder of InfoCor Communications Company, LLC, along with its successor company InfoCorp, LLC; is a Class "A" member and has been a managing member of each of the aforementioned entities; is a shareholder of Speranza, Inc.; and is sometimes referred to collectively, with Ms. Anderson, Mrs. Frater, Speranza, and Trust, as "Conspiracy Defendants."

7. Defendant Angela Frater ("Mrs. Frater") is an adult resident of Ozaukee County; is a Class "A" member of InfoCorp, on information and belief a shareholder of Speranza, Inc.; and is sometimes referred to collectively, with Ms. Anderson, Mr. Frater, Speranza, and Trust as "Conspiracy Defendants."

8. Defendant Cheryl I. Anderson is the daughter of Mr. Frater and Mrs. Frater; is an adult resident of Ozaukee County; is co-founder of InfoCorp, LLC; is a Class "A" member and was a managing member; currently the president of Speranza, Inc.; and is sometimes referred to collectively, with Mr. Frater, Mrs. Frater, Speranza, and Trust as "Conspiracy Defendants."

9. Defendant Hazel and Gordon 1975 Trust ("Trust") is a class "A" member of InfoCorp, LLC,; and is sometimes referred to collectively, with Ms. Anderson, Mr. Frater, Mrs. Frater, Speranza, as "Conspiracy Defendants."

3

10. Defendant Speranza, Inc. is, upon information and belief, a corporation existing under and by
    virtue of the laws of the State of Wisconsin. Speranza, Inc. is an enterprise created by the
    Conspiracy Defendants to receive the assets belong to InfoCorp, LLC, unlawfully possess
    Mr. Veit's securities, and, is sometimes referred to collectively, with Mr. Frater, Mrs.
    Frater, and Trust as "Conspiracy Defendants."

## FACTS COMMON TO ALL CAUSES OF ACTION

11. On or about December 18, 1998, Mr. Veit, Mr. Frater and Ms. Anderson joined together to
form a Wisconsin Limited Liability Company known as InfoCorp LLC.

12. That the principle business of InfoCorp was the purchase and resale of audio visual
technologies, along with hardware and software consistent with that of the educational and
business sectors.

13. That pursuant to InfoCorp's Operating Agreement, Mr. Frater, Ms. Anderson, and Mr. Veit
were issued securities.[1]

14. That Mr. Veit made his monetary investments and considerations in InfoCorp with the
expectation of profits from income and/or, capital appreciation on his investments.

15. That at no time pursuant, did Mr. Veit admit or remove members, appoint or remove
managers or officers, make significant capital expenditures or investments, sell or transfer
substantial amounts of assets, establish budgets, borrow or lend money, acquire or merge with

---

[1] A security is a contract, transaction, or scheme involving: 1. An investment of money or other consideration; 2. In
a common enterprise; 3. With the investor having an expectation of profits, whether from income or from capital
appreciation of the investment; 4. Derived primarily from the managerial or entrepreneurial efforts of others. *SEC
v. W.J. Howey Co., 328 U.S. 293(1946)*

another entity, start or discontinue a line of business, dissolve the company or file for bankruptcy, issue capital calls, or forgive an obligation to make a capital contribution, initiate, defend or settle litigation, or make a distribution.

16. That at all times relevant hereto, Mr. Frater and Ms. Anderson were InfoCorp's member managers, exclusively conducting, administering, and controlling all business and financial aspects therein.

17. That in addition to InfoCorp's principle business, in or about December 2006, Mr. Frater and Ms. Anderson began developing intellectual properties (IP). (See attached Exhibit "B")

18. That, for InfoCorp to fund the development of the intellectual properties, Mr. Veit made substantial financial sacrifices and monetary contributions. (See attached Exhibit "L")

19. That by calendar year 2008 InfoCorp:

   a. Grew its annual gross revenues to nearly $10,000,000; (See attached Exhibit "C" )

   b. Nearly doubled its member's equity from $99,256 at close of business 2007, to $180,390 by close of business 2008; and, (See attached Exhibit "C")

   c. Was granted patent rights by the United States Patent Office for, an adjustable Mounting Cart for a Whiteboard and Projector (US Patent Application 2008/0142667) and a Rotatable Projection System (US Patent Application 2010/0188642) (See attached Exhibit "B"); and,

   d. As a result of the aforementioned, issued distribution checks to its members, by percentage. (See attached Exhibit "C" )

## MS. ANDERSON AND MR. FRATER RUN INFOCORP AFOUL

20. That by 2008, Mr. Veit and other InfoCorp members had begun requesting Mr.

Frater and Ms. Anderson make available the books and records of InfoCorp, and, establish a value for their respective securities.

21. That himself, Mr. Veit made numerous written requests to Ms. Anderson, Mr. Frater, and attorney Carroll, InfoCorp's legal counsel, to view the books and records of InfoCorp, and be provided an accounting, and informed of its business activities. (See attached Exhibit "E," Exhibit "F," Exhibit "G," Exhibit "H," Exhibit "I," Exhibit "J," and, Exhibit "K,")

22. That neither Ms. Anderson, Mr. Frater or Attorney Carroll responded to Mr. Veit's written requests. (See attached Exhibit "V")

23. That, in violation of Wisconsin Chapter 183, no, non-family InfoCorp members were ever provided the opportunity to: (i) review the books and records of InfoCorp; (ii) track their InfoCorp investment; or (iii) provide books or records to their legal counsel; and/or, (iv) accountant, for review and verification that said books and records were being maintained in a proper, lawful manner. (See attached Exhibit "T")

24. That at no time during Veit's employment with InfoCorp, did Mr. Frater or Ms. Anderson hold annual member's meetings, as required by InfoCorp's Operating Agreements, its Amended and Restated Operating Agreement, and Wisconsin Statutes Chapter 183.

25. That at no time relevant was InfoCorp's business, nor the ordinary course of its business, to convey, transfer or sell the bulk of its assets.

## FRATER AND ANDERSON CREATE AN ARTIFICE TO DEFRAUD MR. VEIT, AND STEAL HIS SECURITIES

26. That, under increasing pressure from Mr. Veit and other members, Mr. Frater and Ms. Anderson conspired to create an artifice to defraud; steal InfoCorp assets, and value of securities

6

held by Mr. Veit and others. (See attached Exhibit "N," Exhibit "O," Exhibit "P," and, Exhibit "Q")

27. That Conspiracy Defendant' artifice had five primary features:

    a. create a "new company" to steal InfoCorp's intellectual property, assets, trade secrets, blue sky, and future opportunity;

    b. conceal from Mr. Veit and other members financial information, business activities, and, disclose nothing; then,

    c. provide Mr. Veit and others with fraudulent documents that provided the appearance of InfoCorp insolvency and immediacy; then,

    d. create a short transfer window to prevent scrutiny, would-be buyers, and/or, Mr.Veit legal action, then,

    e. transfer InfoCorp's assets, intellectual property, trade secrets, blue sky, and all future opportunity to their "new company," and, therewith,

    f. steal the value of securities held by Mr. Veit and others.

## MS. ANDERSON AND MR. FRATER SET THEIR ARTIFICE TO DEFRAUD IN MOTION

28. Ms. Anderson and Mr. Frater so combined to create an enterprise of people associated for the common purpose of making money by engaging in a continuing series of schemes to unlawfully transfer InfoCorp's assets, to a "new company" they enjoyed exclusive control over, and, in the process, steal the value of securities held by Mr. Veit and others.

29. That in early 2008, Mr. Veit requested Ms. Anderson and Mr. Frater make InfoCorp's books and records available, and therewith, provide a value for his investment. (See attached Exhibit "T")

30[2]. That, immediately thereafter Conspiracy Defendants terminated Mr. Veit's employment. (See attached Exhibits "L")

31. That over the course of the following months, Mr. Veit made additional written requests for an accounting of his investment. (See attached Exhibit "E," Exhibit "F," Exhibit "G," Exhibit "H," Exhibit "I," Exhibit "J," and, Exhibit "K,")

32. That on February 25, 2009, and during InfoCorp's first ever annual members meeting, Ms. Anderson announced that through the marketing and sale of developed Intellectual Properties, InfoCorp would increase gross revenues from approximately $10,000,000.00 in 2008, to $20,000,000. In 2009. (See attached Exhibits "I," and Exhibit "T")

33. That Mr. Veit trusted and believed Ms. Anderson's 2009 forecast and promise of increased owner's equity, and, therewith, agreed to forgo legal action.

34. That, as InfoCorp's manager, Ms. Anderson knew her February forecast and promise were false, knowing, that InfoCorp did not have; in manufacturing or in inventory, sufficient salable goods, or, in infrastructure or personnel, the wherewithal to support $10 million in additional sales, forecast or promise.

35. That, on information and belief, the purpose of Ms. Anderson's "end of the rainbow" forecast, was to conceal conspiracy defendant's activities, artifice to defraud, and avoid said legal action.

36. That in or about October, 2009, Park Bank called InfoCorp's note. (See attached Exhibit "V")

---

[2]

**8**

37. That, by late 2009, litigation alleging, among other, theft of trade secrets, was being decided against InfoCorp. [3]

That in or about December 2009, InfoCorp members were, again, demanding an accounting, financials, and a value for securities.

38. That, himself, on December 7, 2009, Mr. Veit sent a letter to Ms. Anderson requesting an account of the year's events against her February "end of the rainbow" forecast. (See attached Exhibit "J")

39. That as a result of the above averments, in or about December 2009, Ms. Anderson and Mr. Frater created "new company."[4] (See attached Exhibit "O")

40. That, acting in her capacity as "new company" fiduciary, with scienter, Ms. Anderson never specifically responded to Mr. Veit's letter, or, specifically provided him a 2009 accounting of InfoCorp performance or a value of his securities in accordance with Wisconsin Chapter 183.

41. That, the artifice, "new company," was created for the expressed purpose of stealing InfoCorp assets, and, the value of securities. (See attached Exhibit "P")

42. That in creating "new company," Miss Anderson and Mr. Frater created a competing business to InfoCorp, in violation of Wisconsin Chapter 183, and, an act prohibited under InfoCorp's Operating Agreement. (See attached Exhibit "W")

43. That, acting in their capacities as "new company" fiduciaries, with scienter, Ms. Anderson and Mr. Frater did not generate, or, make available, 2009 year end financials to InfoCorp members. (See attached Exhibit "T")

44. That, acting in their capacities as "new company" fiduciaries, with scienter Ms. Anderson and Mr. Frater did not hold a 2009 InfoCorp annual member meeting. (See attached Exhibit "T")

---

[3] InfoCorp, LLC., vs. Christopher Hunt, et al., Milwaukee case no. 06-CV-9481
[4] "New company," as referred to and identified by Ms. Anderson in attached Exhibits "N," "O," and "P."

9

45. That, in early 2009, and acting in their capacities as "new company" fiduciaries, with scienter, Ms. Anderson and Mr. Frater encumbered InfoCorp with a $50,000 note. (See attached Exhibit "O")

46. That on or about March 29, 2010, Mr. Veit made an additional plea to Ms. Anderson for some accounting of InfoCorp's business activities, and, value of his securities. (See attached Exhibit "K")

47. That, acting in her capacity as a "new company" fiduciary, with scienter, Miss Anderson did not respond to Mr. Veit's requests made under Wisconsin chapter 183.

48. That, acting in their capacities as "new company" fiduciaries, in or about May 2010, Ms. Anderson and Mr. Frater called their "new company" $50,000 note to InfoCorp. (See attached Exhibit "P")

49. That, acting in her capacity as "new company" fiduciary, Ms. Anderson noticed members of meeting in violation of InfoCorp's operating agreement. (See attached Exhibit "N")

50. That, acting in their capacities as "new company" fiduciaries, in or about May 2010, Ms. Anderson and Mr. Frater placed, or caused to be placed for delivery with the United States Postal Service, a letter noticing InfoCorp members of a meeting, "(t)o consider, discuss and vote on the sale of substantially all of the assets of the Company," in violation of InfoCorp's Operating Agreement. (See attached Exhibit "N," Exhibit "O," Exhibit "P," and, Exhibit "Q")

51. That, acting in their capacities as "new company" fiduciaries, together with May 2010 notice of meeting, Ms. Anderson and Mr. Frater provided InfoCorp members a balance sheet they knew, or should have known, was unbalanced, contrived, and fraudulent.[5] (See attached Exhibit "O")

---

[5] When manually calculated, Liabilities total $2,059,444, not 1,655,716, as purported, a discrepancy of $403,728.

52. That, acting in their capacities as "new company" fiduciaries, with scienter and together with May 2010 notice of meeting, Ms. Anderson and Mr. Frater submitted to InfoCorp members "Asset Purchase Agreement" predicated on the aforementioned balance sheet they knew, or should have known was unbalanced, contrived, and fraudulent.

53. That, acting in their capacities as "new company" fiduciaries, together with May 2010 notice of meeting, Ms. Anderson and Mr. Frater included a ballot prompting members "vote;" "to approve the sale of substantially all of the assets of [InfoCorp]." (See attached Exhibit "Q")

54. That, acting in her capacity as "new company" fiduciary, Ms. Anderson unlawfully called and presided over InfoCorp's members meeting of May 26, 2010.

55. That, acting in her capacity as "new company" fiduciary, Ms. Anderson included "new company" attorney, Shawn Govern, in InfoCorp's May 26, 2010 members meeting. (See attached Exhibit "N")

## "NEW COMPANY" FIDUCIARY AND ATTORNEY PRESIDE OVER INFOCORP'S MAY 26, 2010 MEMBERS MEETING

56. That during the member's meeting of May 26, 2010, Mr. Veit, through proxy, raised objections to the lawfulness of the members meeting, proposed sale, and demanded Anderson take other steps to redress the problem, and, made the following demands (See attached Exhibit "S"):

   a. To adjourn the member's meeting and issue a capital call, thereby allowing Mr. Veit the opportunity to protect his interests and investment in InfoCorp;

11

b.  To adjourn the member's meeting, therewith allowing for a qualified third party evaluation of InfoCorp's financial condition, in accordance with InfoCorp's Operating Agreement; (See attached Exhibit "W")

c.  To adjourn the member's meeting, and through a qualified third party evaluation determine a way in which to optimize InfoCorp's position;

d.  To adjourn the member's meeting, and notify InfoCorp's creditors, of which Mr. Veit was one, of the impending sale of its assets;

e.  To adjourn the member's meeting, so as to allow Mr. Veit to audit the books and records of InfoCorp and vote intelligently on the proposed sale; and

f.  To adjourn the member's meeting, and reconsider the proposed sale to the buyer without consideration of Veit's investment.

(See attached Exhibit "S")

57. That, when asked, Mr. Veit's proxy told Ms. Anderson that Mr. Veit had financial resources sufficient to respond to any capital call. (See attached Exhibit "S")

58. That, acting in her capacity as "new company" fiduciary, with scienter Ms. Anderson ignored Mr. Veit's numerous objections, demands, and offers.

59. That, acting in their capacities as "new company" fiduciaries, with scienter, on June 1, 2010, Ms. Anderson and Mr. Frater transferred all assets of InfoCorp to "new company" and therewith, stole the value of Mr. Veit's securities.

60. That, acting in their capacities as "new company" fiduciaries, Miss Anderson and Mr. Frater did not conduct an appraisal of InfoCorp assets prior to transfer, as required, and in violation of InfoCorp's operating agreement. (See attached Exhibit "W")

61. That, at all times since June 1, 2010, Ms. Anderson and Mr. Frater have unlawfully possessed the assets of InfoCorp, and securities of Mr. Veit and others.

62. That, while InfoCorp fiduciaries, with scienter, Ms. Anderson and Mr. Frater concealed from members (i) their creation of "new company," that, (ii) they caused "new company" to

encumber InfoCorp (See attached Exhibit "O"), that, (iii) they provided members with documents they knew, or should have known were contrived and fraudulent, that they, (iv) convened and conducted an InfoCorp members meeting unlawfully, so as to, (iv) steal InfoCorp assets, and therewith, steal the value of securities held by Mr. Veit and others. (See attached Exhibit "P")

### PECUNIARY LOSS AND MALICIOUS NATURE OF DEFENDANTS' ACTIONS

63. Mr. Veit has suffered pecuniary damage and loss, consequential and incidental damages, including, but not limited to, theft of his securities, as a direct and proximate result of Conspiracy Defendants' egregious actions described herein.

64. That all the aforementioned conduct was carried out, with scienter, in a willful, wanton, and malicious manner having as its primary purpose to steal Mr. Veit's securities.

65. That such conduct mandates that said Defendants be themselves punished and made to pay for their actions taken merely to steal from Mr. Veit.

66. That as a result of all the foregoing, Plaintiff is entitled to punitive damages from the Defendants in an amount to be determined by the trier of fact.

## FIRST CLAIM FOR RELIEF
## CIVIL CONSPIRACY
### (As to Ms. Anderson, Mr. Frater, Mrs. Frater, Trust, and Speranza)

Plaintiff realleges and incorporates by reference each of the preceding allegations and subsequent allegations in this Complaint, as if those paragraphs had been fully set forth herein.

13

67. The fraudulent acts described herein were in furtherance of a conspiracy among the Conspiracy Defendants and Speranza to defraud Mr. Veit, and steal the value of securities held by him and other.

68. The Conspiracy Defendants and Speranza acted together to accomplish a lawful purpose by unlawful means.

69. Mr. Veit has suffered pecuniary loss and harm as a result of the conspiracy.

## SECOND CLAIM FOR RELIEF

## FRAUD IN THE OFFER OR SALE OF SECURITIES

### Violations of Section 17(a) of the Securities Act

### (Against Ms. Anderson and Mr. Frater)

Plaintiff realleges and incorporates by reference each of the preceding allegations and subsequent allegations in this Complaint, as if those paragraphs had been fully set forth herein.

70. Defendants Anderson and Frater, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

a. with scienter, employed devices, schemes, or artifices to defraud;

b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; or

14

c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

71. By engaging in the conduct described above, each of the defendants violated, and unless restrained and enjoined will continue to violate Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF

## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

### (Against Ms. Anderson and Mr. Frater)

Plaintiff realleges and incorporates by reference each of the preceding allegations and subsequent allegations in this Complaint, as if those paragraphs had been fully set forth herein.

72. Defendants Anderson and Frater, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, or of the facilities of a national securities exchange, with scienter:

a. employed devices, schemes, or artifices to defraud;

b. made untru statements of a material fact or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; or

15

c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons

73. By engaging in the conduct described above, each of the defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §240.110b-5.

## FORTH CLAIM FOR RELIEF

## PROMISSORY ESTOPPEL

**(As to Speranza, Ms. Anderson, and Mr. Frater)**

Plaintiff realleges and incorporates by reference each of the preceding allegations and subsequent allegations in this Complaint, as if those paragraphs had been fully set forth herein.

74. That Ms. Anderson had a reasonable expectation that her 2009, end of the rainbow, "forecast," would induce Mr. Veit into delaying his efforts, to: exercise rights afforded him under Wisconsin Chapter 183, inspect the books and records of InfoCorp, and, obtain a value for his securities.

75. That Mr. Veit's reliance on Ms. Anderson's affirmative representations, worked to his detriment.

76. That to refuse to hold Ms. Anderson accountable for here affirmative representations would sanction fraud and injustice.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

## **I.**

Issue findings of fact and conclusions of law that the defendants committed the alleged violations.

## **II.**

Issue judgments, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining each defendant and his agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c) and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; enjoining Anderson from violating Sections 206(1) and 206(2) of the Advisers Act; and enjoining Frater from violating Section 15(a)(1) of the Exchange Act.

## **III.**

Order defendants Anderson and Frater to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

## **IV.**

Order defendants Anderson and Frater to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3),

and additionally order defendant Anderson to pay civil penalties under Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e)(1).

## V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED:     May 22, 2016, respectfully submitted,

By

Jackson Fairbanks Veit

Contact information:
Jackson Fairbanks Veit
Hoods Creek Lane
Franksville, WI 53126
JacksonVeit@gmail.com
(414) 416-0037